UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

DEC 1 4 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-476-GWU

MARY MANIS,                                                                     PLAINTIFF,

VS.                               **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Manis

Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Manis

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.   If there is, we then examine:   (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment.  The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987).  Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Manis

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Manis

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Mary Manis, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of insulin-dependent diabetes mellitus with peripheral neuropathy (burning/numbness in legs and feet), congestive heart failure, obstructive sleep apnea, morbid obesity, a history of hypertension, hyperlipidemia, bilateral lower/upper extremity edema, degenerative joint disease, and complaints of smothering, shortness of breath, occasional dizziness, chest pain, weakness, malaise, bilateral foot cramps, excessive menstrual bleeding, and sleep disturbances. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, accordingly, was not entitled to benefits. (Tr. 21-4). The Appeals Council declined to review, and this action followed.

7

At the second of two administrative hearings, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 439). She: (1) could sit, stand, and walk up to four hours each in an eight-hour day, with rest periods in the morning, at lunch, and in the afternoon; (2) could never squat, crawl, or climb, (3) could occasionally bend and reach above shoulder level; and (4) would have a total restriction of activities at unprotected heights, and a mild restriction in exposure to moving machinery. (Tr. 439-40). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 440-1).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

At the outset, the Court notes that there is a potentially significant discrepancy between the ALJ's purported residual functional capacity finding as given in his hearing decision and the hypothetical question given to the VE. In the hearing decision, the ALJ indicated that the plaintiff would require the option of sitting or standing "as necessary," which is clearly more restrictive than the regular rest

Manis

periods described in the hypothetical question, and she was also precluded from any exposure to moving machinery. (Tr. 21, 23).

The plaintiff's treating family physician, Dr. C. A. Moore, submitted office notes showing that he had started issuing the plaintiff with temporary leaves of absence from her job in 2001 due to foot pain and swelling ascribed to diabetic neuropathy. (Tr. 199-201). In March, 2002 and, again, in March 2003, Dr. Moore completed functional capacity assessments limiting his patient to less than full-time sitting, standing, and walking, lifting less than 10 pounds occasionally, and having many other non-exertional restrictions which would essentially preclude full-time work activity. (Tr. 180, 325). Office notes from Dr. Moore are not entirely legible, but his diagnoses included congestive heart failure (CHF), edema, diabetes mellitus, excessive menstrual bleeding, morbid obesity, and sleep apnea. (E.g., Tr. 204, 325). She was eventually referred to an endocrinologist, Dr. Rogelio Uy. Dr. Uy began treating the plaintiff in February, 2001 and submitted office notes reflecting regular visits through June, 2003. (Tr. 259, 299). The physician's most recent notes reflected difficulty controlling the plaintiff's blood sugar despite the use of Insulin, and her medication for blood pressure/CHF (Cozaar) was also adjusted. (Tr. 299-303). Dr.Uy's diagnoses included Type II diabetes mellitus with neuropathy, hypertension, congestive heart failure, hyperlipidemia, degenerative joint disease, and obesity. (Tr. 299). He did not list functional restrictions.

9

Manis

The ALJ stated that he rejected Dr. Moore's restrictions because they were not supported by specific clinical findings in his records, not supported by the longitudinal record, and not supported by the subsequent findings and opinion of a consultative examiner. (Tr. 18).

The ALJ based the restrictions in the hypothetical question on the report of the one-time consultative examiner, Dr. David Hiestand, whose examination took place on September 27, 2003. (Tr. 19). The physician noted that the plaintiff was on both Insulin and oral medications for her diabetic condition, and noted a history of congestive heart failure, hypertension, and obstructive sleep apnea. (Tr. 326). She was using a CPAP machine for the sleep apnea, but still complained of daytime somnolence and poor sleep. (Id.). Despite taking diuretics, she still felt that she became overloaded with fluids at times and felt a generalized chest pressure. (Tr. 328). Her congestive heart failure had not been formally evaluated. (Id.). Dr. Hiestand's examination showed that the plaintiff was morbidly obese, weighing 345 pounds of the height of 64 inches, and her blood pressure was 187/91. (Tr. 328). She did have some difficulty getting around the room and getting on and off the examination table. Her heart was tachycardic and she had difficulty lying flat because of dyspnea. (Tr. 329). There were crackles in the bases of the lungs suggestive of heart failure, and 2+ edema of the lower extremities. (Id.). The tendon reflexes were symmetrical, but there was decreased sensation of both legs from the

10

mid calves to the feet. (Id.). She had a reduced range of motion of the lumbar spine and of the hip joints due to obesity, and paraspinal muscle spasms were present. (Id.). Dr. Hiestand concluded that "the patient has evidence for moderate restriction" in her tolerance for bending, moving about, standing, lifting, carrying objects, and handling objects due to her morbid obesity, but there was no impairment in her tolerance for sitting, ability to travel, or speaking. (Tr. 329-30). He reviewed some progress notes "from the patient's primary care provider" dated January, 2003, February 25, 2003, March 27, 2003 and June 26, 2003. (Tr. 330). Although no name was given, these dates match notes from from Dr. Uy. (Tr. 299-302). Dr. Hiestand concluded that the plaintiff's decreased sensation of the lower extremities was due to diabetes with sensory neuropathy, and her "other end organ damages are related to hypertension and congestive heart failure." (Tr. 330). He added that "the patient has evidence of congestive heart failure on today's examination" and was "clearly not controlled on her blood pressure . . . [s]he has volume overload" and needed to be "more tightly controlled." (Id.). He felt that her obstructive sleep apnea was "likely being undertreated," and her "morbid obesity is worsening and is exacerbating all of her current medical conditions." (Id.). Her menstrual bleeding was currently being evaluated by her primary care physician. (Tr. 330-1). He prepared a functional capacity form listing the restrictions given in the hypothetical

11

question to the VE (Tr. 332), although, as previously noted, the ALJ's actual functional capacity finding was somewhat different and more restrictive.

The discrepancy between the ALJ's functional capacity finding and the hypothetical question would be harmless error if Dr. Hiestand's opinion were entitled to controlling weight. However, the ALJ's rationale for rejecting the greater restrictions of Dr. Moore is not entirely satisfactory. Dr. Moore was unquestionably a treating source, and, as such, is normally entitled to greater weight than a one-time examiner. Walker v. Secretary of Health and Human Services, 980 F.2d 1066, 1070 (6th Cir. 1992). The ALJ concluded that the consultative examiner's opinion provided sufficient evidence to overcome the opinion of the treating physician, even though the consultative physician's partial review of the record did not support the ALJ's conclusion that the plaintiff's congestive heart failure was "an isolated episode," and was under adequate control with medication, that her blood glucose levels had remained stable and within normal limits with intermittent medication adjustments, and her sleep apnea problem remained stable with the use of a CPAP machine. (Tr. 20). This stands in stark contrast to the consultative examiner's statements that the plaintiff had evidence of congestive heart failure on his examination that very day, that her blood pressure was "clearly" not controlled and she was having problems with "volume overload," and that her sleep apnea was "likely being undertreated." (Tr. 330). The consultative examiner did not have

12

Manis

access to all the records from treating sources, and apparently did not have access to Dr. Moore's functional capacity findings.  Clearly, he never commented on Dr. Moore's restrictions, or gave reasons for finding fewer restrictions.

Therefore, the ALJ's rationale for rejecting Dr. Moore's opinions did not satisfy the procedural requirements of 20 C.F.R. Section 404.1527(d), since the specific reasons given for declining to give weight to the treating physician's medical opinion appeared to be in error. The evidence in all of the notes from various sources shows that there were objective medical conditions which could reasonably have supported Dr. Moore's restrictions, and his opinion was not so patently deficient  that the Commissioner could not possibly credit it. See Wilson v. Commissioner of Social Security, 378 F.3d 541, 547 (6th Cir. 2004).

On the other hand, given that there is some evidence that Dr. Moore's restrictions may have been partially based on the plaintiff's subjective complaints (Tr. 408), an outright award of benefits is not indicated under the present set of facts.

A remand will be required for additional consideration.

This the _____/ ⁵/_____ day of December, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13